IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICO AYUSO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 4:13-cv-01211-DDN |
| | ) |
| CERTAIN UNDERWRITERS AT LLOYD'S | ) |
| LONDON, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S SUR-REPLY MEMORANDUM  TO DEFENDANTS' REPLY AND RESPONSE TO PLAINTIFF'S JOINT MEMORANDUM IN FURTHER OPPOSITION TO DEFENDANTS' COMBINED MOTION TO DISMISS THE ACTION AS TO CO-DEFENDANTS BURNS & WILCOX, LTD. AND MICHAEL L. EHRHARDT AND TO REMOVE FOR FRAUDULENT AND PRETENSIVE JOINDER; AND IN FURTHER SUPPORT OF CROSS MOTION BY PLAINTIFF TO REMAND THIS ACTION TO THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**

Plaintiff, Rico Ayuso, by and through his undersigned attorney, The Chase Law Firm PC, pursuant to leave granted by this Court, as and for his sur-reply memorandum to Defendant's "reply and response" filed  August 8, 2013 pursuant to the orders of this Court, respectfully sets forth as follows:

**INTRODUCTION TO THE SUR-REPLY**

The majority of Plaintiff's joint memorandum was not responded to by Defendants in their reply and response; effectively conceding the facts and law submitted in the Plaintiff's joint memorandum. Plaintiff will not repeat facts and arguments already presented to the Court on the motion and cross motion and not challenged; only directing the Court's attention to new matters raised by Defendants in their reply and response.

Defendants' combined motion prays for two distinct grants of relief. First, to remove the state action to this court for fraudulent and pretensive joinder; and second, to

1

dismiss the action as to Defendants Burns & Wilcox, Ltd. ("Burns") and Michael L. Ehrhardt ("Ehrhardt"). Pursuant to applicable law, *only* if this court grants removal after considering the motion, the opposition thereto and the cross motion to remand and takes jurisdiction over the entire cause; then and only then, should this Court consider the second request for relief, to dismiss as to Defendants Burns and Ehrhardt. If this Court declines to remove and grants remand to the state court, the request for dismissal is never reached.

Therefore, Plaintiff addresses the branch of the combined motion for removal, first; and the branch of the motion to dismiss, second. Defendants, by their reply and response, strongly assist and impel the court in finding for the Plaintiff on the issue of removal, by both the "facts" and the citations they now submit to the court; most importantly, *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010)

## STATEMENTS AND ARGUMENTS IN DEFENDANTS' REPLY AND RESPONSE

Defendants submit the affidavit of Melanie Elias (Exhibit A to Defendant's reply and response with 75 page attachment) in reply to Plaintiff's joint response. The affidavit and Defendants' reply and response each submit the same material misstatement of fact to this Court, which goes to the essence of whether there was a disclosed principal. **That affidavit improperly changes the wording of the Policy, by accident or by intention**. Although crafted with great care to *imply* a disclosed principal, the words that Ms Elias uses in her affidavit are not stated in the Policy.

As will be shown in this sur-reply, the Defendants fail – in all respects – to meet Plaintiff's opposition to their combined motion and to defeat Plaintiff's motion to remand.

**THE AFFIDAVIT OF MELANIE ELIAS AND THE REPLY AND RESPONSE SUBMITTED BY DEFENDANTS BOTH CONTAIN THE SAME MATERIAL MISREPRENTATIONS OF AN ESSENTIAL FACT ON THE ISSUE OF THE NAMED INSURER IN THE POLICY**

The Policy (Exhibit A to Defendants' combined motion; Doc. # 6, Page 16) captioned, "CERTIFICATE PROVISIONS" states at paragraph 2, "… The Insurers hereunder are those companies (hereinafter called the 'Underwriters') whose names are shown on the Declarations Page." The Common Policy Declarations page (Doc. # 6, Page 18) states that "Insurance is effective with certain UNDERWRITERS AT LLOYD'S LONDON."  No other insurers are named on the Common Policy Declarations Page.

In paragraph "4" of Ms Elias's affidavit, she states as follows, "As indicated on Plaintiff's policy of insurance, Policy Number 482041, his policy was 100% underwritten by Lloyd's Syndicate Number 33—the Hiscox Syndicate." Counsel for the Defendants repeat and expand the statement by Ms Elias; stating in their reply and response (page 4, second paragraph, lines 1 to 4), "As can be seen on the policy of insurance attached and incorporated into the Petition by Plaintiff, the subject insurance policy was issued by Syndicate #33, the 'Hiscox Syndicate.' (*See* Doc #6, pp.19 and 20)."

That is **not** what is stated in the Policy. The Elias affidavit and the reply and response are clearly misrepresenting and misstating to the Court what is actually in the Policy – and it can only be intentional.

The Policy, in pertinent part, states as follows:

3

1. (Doc. # 6, Page 16) states, The Insurers hereunder are those companies (hereinafter called the 'Underwriters') whose names are shown on the Declarations Page."

2. (Doc. # 6, Page 18) states, "Insurance is effective with certain UNDERWRITERS AT LLOYD'S LONDON."

3. (Doc. # 6, Page 19) states in pertinent part, "33044412   04-12   04/01/12—03/31/13 SYNDICATE LIST"

4. (Doc. # 6, Page 20) captioned, "Lloyd's Mid Range Homeowners 330.444-12" states only, "100%   HIS 33"

**None** of the statements in the Policy are anywhere near Ms Elias's averment that "As indicated on Plaintiff's policy of insurance, Policy Number 482041, his policy was 100% underwritten by Lloyd's Syndicate Number 33—the Hiscox Syndicate" or Defendant's counsels' statement in the reply and response that "the subject insurance policy was issued by Syndicate #33, the 'Hiscox Syndicate.' (*See* Doc #6, pp.19 and 20)." These statements are false.

Further, with relation to the "syndicate list" (Doc. # 6, Page 19, above), that list was not a part of the Policy, by attachment, reference or otherwise. How then, could there possibly be a disclosed principal?

Doc. # 6, Page 19, lists a number of items; some as endorsements, some as exclusions and some as forms or pages on applicable law. The syndicate list is not listed on page 19 as a stated Policy endorsement. There never was a disclosed principal on the subject Policy of insurance.

Additionally, the Policy term (Doc. # 6, Page 16) is from 10/23/2012 to 10/23/2013. This "syndicate list" is for a term 04/01/12 – 03/31/13.

### AS A MATTER OF LAW, IT IS REQUIRED THAT THE CITIZENSHIP OF EACH MEMBER OF THE SYNDICATE BE PLED. NO REMOVAL TO FEDERAL DISTRICT COURT MAY BE SUSTAINED ABSENT THIS ESSENTIAL DISCLOSURE AND PLEADING, WHICH HAS NOT BEEN MADE BY DEFENDANTS.

The citizenship of the members of the Lloyd's HIS 33, Syndicate Number 33 or of the Hiscox Syndicate are never pled.

Going then to the 75 page attachment to Ms Elias's affidavit, some of the rows have a country listed – some not. Some names have an incorporation country – some not. None have an office address or residence address stated. None have full names of members, only partial names, initials or in many cases, only numbers appear. All have "Member Codes" but no indication as to their meanings. There is no way to know whether any entity that is a corporation or an "LLC" is valid or in good standing or if they may be in Missouri – or not. It is impossible then, to find Hiscox Syndicate to have been a disclosed principal when the policy was issued. There never was a disclosed principal on the subject Policy of insurance.

Defendants cite *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 at 1091 (11th Cir. 2010) in support of the proposition that citizenship of each member this entity of must be examined for "the requirements of 28 U.S.C. § 1332." The statement is correct, but it is the most minor aspect of this seminal case. The decision and holding in *Underwriters at Lloyd's, London v. Osting-Schwinn* is quite lengthy; but some few paragraphs merit quotation here, as the decision and holding fully supports Plaintiff's

5

position that Defendants have completely failed to support their burden and failed to establish diversity jurisdiction.

*Underwriters at Lloyd's, London v. Osting-Schwinn, inter alia*, states,

"**A wealth of Supreme Court precedent yields the conclusion that the Lloyd's syndicates, as unincorporated associations, must plead the citizenship of each of their members. Because [1082] the syndicates did not do so, they failed to establish diversity jurisdiction.** We, therefore, reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion. 613 F.3d 1079 (2010) [1083] The Society of Lloyd's, London, is not an insurance company, but rather a British organization that provides infrastructure for the international insurance market. Originating in Edward Lloyd's coffee house in the late seventeenth century, where individuals gathered to discuss insurance, the modern market structure was formalized pursuant to the Lloyd's Acts of 1871 and 1982. Lloyd's Act, 1871, 34 Vict., c. 21, pmbl.; Lloyd's Act, 1911, 1 & 2 Geo. V, c. 62; Lloyd's Act, 1951, 14 & 15 Geo. VI, c. 8; Lloyd's Act, 1982, c. 14. **Lloyd's itself does not insure any risk. Individual underwriters, known as 'Names' or 'members,' assume the risk of the insurance loss.**

[Note that in the instant litigation, Plaintiff has sued Certain Underwriters at Lloyd's London and that Mendes & Mount LLP (Plaintiff's joint memorandum, Page 3, last paragraph) wrote, "Our office is often designated as the agent for service of process subscribed by Certain Underwriters at Lloyd's, London. In that capacity, we are authorized only to accept service of suit by the Named Insured **against the Underwriters subscribing the policy**.] Continuing,

> Names can be people or corporations; they sign up for certain percentages
> of various risks across several policies. Once admitted to the Society of
> Lloyds, each Name is subject to a number of bylaws and regulations
> ensuring that he or she is solvent and 'that at all times there are available

6

sufficient funds' to pay all claims. *See, e.g.,* Lloyd's Act, 1982, c. 14 § 8. Critical to the diversity jurisdiction question, Names are not only British citizens, but may be of many nationalities. Lloyd's Act, 1982, c.14, pmbl. (5).

Names underwrite insurance through administrative entities called syndicates, which cumulatively assume the risk of a particular policy. In this case, syndicates 861, 1209, and 588 subscribe to the Rockhills' policy. The syndicates are not incorporated, but are generally organized by Managing Agents, which may or may not be corporations. The Managing Agents determine the underwriting policy for the syndicate and accept risks on its behalf, retaining a fiduciary duty toward the underwriting Names. **As mere administrative structures, the syndicates themselves bear no risk on the policies that they underwrite; the constituent Names assume individual percentages of underwriting risk.** The Names are not liable for the risks that the other Names assume. Lloyd's Act, 1982, c. 14 § 8(1). **Names purchase insurance through underwriting agents.** Lloyd's Act, 1982, c. 14 § 8(2). [1084… As is typical, the Rockhills' contract has a provision explaining that 'in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.' **Thus, the legal relationship between the Names and the insured is a vertical one: it is the individual Names, not the syndicate, who are directly liable in the event of loss, as if each Name had a contract with the insured.**

**For federal diversity jurisdiction to attach, all parties must be completely diverse**, *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806); *Palmer v. Hosp. Auth. of Randolph County,* 22 F.3d 1559, 1564 (11th Cir.1994); *Tardan v. Cal. Oil Co.,* 323 F.2d 717, 721-22 (5th Cir.1963),* (Citation Omitted) and the amount in controversy must exceed $75,000, 28 U.S.C. § 1332(a). (Citation Omitted) **The party commencing suit in federal court—in this case, the underwriting syndicates at Lloyd's—has the burden of establishing, by a**

7

**preponderance of the evidence, facts supporting the existence of federal jurisdiction.** *See* Fed.R.Civ.P. [1086] 8(a)(1); <u>McCormick v. Aderholt,</u> 293 F.3d 1254, 1257 (11th Cir.2002).

**This appeal turns principally on the citizenship requirement.** The underwriting syndicates at Lloyd's have for some years assumed that they are permitted to sue and be sued in federal court without disclosing the citizenship of their member Names, and they have had some success in this. We, nevertheless, must determine whether that practice comports with federal law governing diversity jurisdiction. **As courts of limited jurisdiction, we are obliged to 'scrupulously confine [our] own jurisdiction to the precise limits which the statute has defined**.' <u>Healy v. Ratta,</u> 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934). We turn, then, to the central issue of whether the Lloyd's syndicates in this case could properly invoke the district court's diversity jurisdiction without pleading the citizenship of each of their member Names.

**In holding that syndicates of Lloyd's underwriters must plead the citizenship of each of their members, we join two of our sister circuits. Faced with the same question we face here, the Seventh Circuit concluded as follows:**

**An underwriting syndicate at Lloyd's has the personal-liability characteristics of a general partnership and the management structure of a limited partnership. It is not incorporated and does not have the structure of a trust ... [T]he names are natural persons and sole traders, subscribing to policies of insurance** *each for his or her own part* **and not one for the other. They are** *members* **of various syndicates. General partnerships, limited partnerships, joint stock companies, and unincorporated membership associations all are treated as citizens of every state of which any partner or member is a citizen. It follows that the underwriting syndicates have the citizenships of every name.**

8

**Ultimately, 'a remand [is] clearly ... required in this suit as currently constituted, since the record does not disclose the identity, let alone the citizenship, of the Names involved in the case. And without knowledge of that citizenship, it [is] impossible to say that complete diversity exists.'** <u>E.R. Squibb,</u> 160 F.3d at 930. Although Dornoch's citizenship has been revealed, until the other Names' citizenship has been shown—or, perhaps, until the complaint is amended to state that Dornoch is proceeding in its individual capacity—the district court could not properly find, by a preponderance of the evidence or otherwise, that the parties are completely diverse. **'[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.'** <u>Univ. of S. Ala. v. Am. Tobacco Co.,</u> 168 F.3d 405, 410 (11th Cir.1999). (Citation Omitted)

**In short, the district court should not have continued past the jurisdictional [1093] threshold in this matter.** Accordingly, we reverse the judgment of the district court, vacate the summary judgment order it entered in favor of the Underwriters, and remand the case for further proceedings consistent with this opinion" (Emphases Added)

In like manner, the instant motion prosecuted by Defendants to remove for fraudulent and pretensive joinder should, in all respects, be denied. *Univ. of S. Ala. v. Am. Tobacco Co., supra.* Upon denial, the cause should be immediately remanded to the jurisdiction of the state court from which it had been removed on June 26, 2013.

### JURISDICTION BELONGS IN THE MISSOURI COURTS

"RSMo. § 506.500. 1. states, "Any person or firm, whether or not a citizen or resident of this state, or any corporation, **who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state** as to any cause of action arising from the doing of any of such acts: **(1) The transaction of any business within this state; (2)**

9

**The making of any contract within this state;... (5) The contracting to insure any person, property or risk located within this state at the time of contracting;**" (Emphasis Added)

As set forth at length in the Plaintiff's joint memorandum, all three defendants transacted business, made contracts and contracted to insure Plaintiff, his property and risk within Missouri. "Underwriters at Lloyd's are ... eligible surplus lines insurers in all US jurisdictions except Kentucky." (Plaintiff's joint memorandum, page 4, last line, quoting Defendant Lloyd's website)

## DEFENDANTS SUBMIT INSUFFICIENT GROUNDS TO SUSTAIN DISMISSAL

As set forth above, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue. *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999).

Should this Court elect to continue to decide whether the instant action should be dismissed as against Defendants Burns and Ehrhardt; Plaintiff suggests that Defendants' paragraphs in the "reply" section of the reply and response are in error, where the claim is made that merely stating an affirmative defense that the petition "failed to state a claim upon which relief may be granted" is sufficient cognizable ground for dismissal. Just stating the words of a standard affirmative defense, without a single fact to support their position is insufficient to sustain dismissal.

When considering a Rule 12(b)(6) motion to dismiss, the court presumes that all the allegations of the complaint are true; it resolves all doubts or inferences in the plaintiff's favor; and it reads the complaint in the light most favorable to the Plaintiff. The burden of proof on such a motion is on the party making it. No material from outside the pleadings may be considered. *See*, Section 6.7(d) The state court petition fully sets forth facts stating each defendant's acts within the state of Missouri; as Missouri is a fact-

10

pleading and not a notice-pleading jurisdiction. For this branch of the motion, the affidavit of Ms Elias and all arguments by Defendants outside of the pleadings may not be considered. Only the petition and the answer are to be considered.

Facially, the extensive fact-based petition and the admissions in the answer more than sustain the relatively minimal burden on Plaintiff.

Plaintiff maintains that Defendants Burns and Ehrhardt are necessary parties.

Defendants *now* segue and argue that there is no proof that Defendants Burns and Ehrhardt owed a duty to the Plaintiff. That is just not true.

The petition states that Defendants Burns and Ehrhardt were and still are licensed Business Entity Producers, so authorized by the Missouri Department of Insurance under License Number 0003853. Defendant Ehrhardt was and still is the Licensee of  Defendant Burns, a licensed Business Entity Producer, so authorized under License Number 289311 by the Missouri Department of Insurance. The petition further states that Defendant Burns and Defendant Ehrhardt were and still are the Agents of Defendant Lloyds. The petition further states that Defendant Ehrhardt was and still is the "Authorized Representative" of Defendant Lloyds. The petition further states that on or about September 18, 2012 Defendant Burns made and issued a quotation for a policy of homeowners insurance for the Subject Property with an "Effective Period" of "10/23/12 at 12:01 am to 10/23/13 at 12:01 STD time" with Defendant Lloyd's named as "Supplier(s)" therein with stated policy limits and deductibles. The petition further states that Defendant Burns retained and negotiated all premium payments received from Plaintiff on behalf of Defendant Lloyd's and itself. All of these functions come with specific obligations to insured persons under Missouri law, as set forth in the Plaintiff's joint memorandum.

There are many other duties to Plaintiff as an insured person imposed upon Defendants Burns and Ehrhardt under Missouri law. These have been set forth at length in Plaintiff's joint memorandum referencing the petition.

The physical acts performed by Defendants Burns and Ehrhardt were many and have been set forth at length in Plaintiff's joint memorandum. They will not be repeated here.

Defendants next (reply and response, page 2, 3rd paragraph) cite *Hecker v. Missouri Prop. Ins. Placement Facility*, 891 S.W.2d 813, 815 (Mo. banc 1995) for the proposition that "an insurance agent does not have a continuing duty to an insured after the delivery of the policy." What *Hecker* actually *held* was that an insurance broker did not have a duty to the insureds to either procure a renewal of their insurance or notify them that he would not submit a renewal application on their behalf.

In the instant action, regardless of the question of duty, as Defendant Burns was the only entity responsible for accepting the initial premium less its fee and sending the premium balance to Defendant Lloyd's, that would suffice for Defendant Burns to be a necessary party.  Further, Defendant Burns collected the balance of the premium from Royal Premium long after the Policy was in force. That too would suffice. Burns was also the primary point of contact between the insured and Lloyd's of London. Plaintiff never contacted Lloyd's in England. When he had to deal with Defendant Lloyds – as in reporting a disastrous fire in December 2012 – Defendant Burns was the only entity responsible for starting the claims process, accepting Plaintiff's report, assigning a claim number and assigning Defendant Lloyd's adjuster, "Minuteman Adjusters, Inc.," which demanded of Plaintiff that he submit to an examination under oath. On Minuteman's letterhead, there is printed, "A Kaufman Group Company." In Defendant Burns corporate disclosure statement filed in this Court on June 26, 2013, it is disclosed that Defendant

12

Burns is wholly owned by "The H. W. Kaufman Financial Group," upon information and belief, the same firm. Directly or indirectly, Defendant Burns continued to act.

The claim that Defendant Burns and Defendant Ehrhardt have been pretensively joined is offensive when, in every single aspect of the insurer/insured relationship – before and after the fire – they were completely involved.  Finally, upon information and belief, in all of Defendant Lloyd's policies, Defendant Burns collected and continues to collect all premiums, rendering a portion to Defendant Lloyd's. No insured sends its premiums to any English syndicate or to its members. No insured contacts an English syndicate, even if they somehow knew what it is, where it is and who its members are. All insured persons deal with Defendant Burns as an insurance agent, as expected by all defendants. Defendant Ehrhardt is the continuing Authorized Representative and Agent of Defendant Lloyd's and the continuing licensee of Defendant Burns under Missouri's Surplus Lines Law.

It is evident from the foregoing that there has been no improper or pretensive joinder to "defeat diversity jurisdiction." The issue of diversity did not arise until raised by defendants *after* the petition was properly served and filed in state court.

## ATTORNEY'S FEES, COSTS AND EXPENSES

In the Plaintiff's prayer for relief in the Plaintiff's joint memorandum, Plaintiff requested that the Court "award Plaintiff reasonable attorneys fees for defending the combined motion and prosecuting the motion to remand" pursuant to 28 U.S.C § 1447(c). Plaintiff's counsel has expended more than 70 hours of attorney's time in the defense of the motion and prosecution of the cross motion.

As is now evident, there never was a reasonable expectation by Defendants to succeed at removal. They are well aware of the cases against them in this regard throughout the United States, including the cases cited in their motion and *Underwriters*

*at Lloyd's, London v. Osting-Schwinn, supra*, in the reply and response; all cited by them as authoritative but for propositions that do not apply to the instant action. Do they assume that plaintiffs' attorneys will not read the cases? Why they continue to put plaintiffs on the rack this way is unknown. It is also wrong to aver that the Policy states what it does not. It's not as if the Defendants haven't read the Policy. They have read it and misrepresented to the Court as to what was stated in the Policy. That's just wrong. Why force plaintiffs to defend removal and to move to remand when they know that jurisdiction is properly in the state courts; unless experience suggests to them that many insured persons will just capitulate? Is there some cost/benefit analysis in removal that Lloyd's has considered, with which counsel for insured persons are unaware? Why misstate the facts of Defendant Lloyd's citizenship? Defendants, in their combined motion, stated at paragraphs 4 and 9b,  – after the petition had averred Lloyd's to be an insurance market and not an entity – "Defendant Lloyd's is a foreign corporation organized, incorporated and existing under the laws of the United Kingdom, with its principal place of business in London..." This factual "misstatement" caused Plaintiff's counsel a great amount of time to research and disprove – needlessly.

Plaintiff asks for an order denying the Defendants' motion and granting Plaintiff's cross motion and further, that Plaintiff's attorneys be permitted to submit their time, reasonable hourly rate, costs and expenses to this Court for consideration of an award of attorneys' fees, costs and expenses in the expected order to remand to state court.

## **CONCLUSION**

For the reasons stated above in this sur-reply memorandum and in the joint memorandum filed on July 21, 2013, Plaintiff Rico Ayuso respectfully prays that this Court (1) deny removal on the ground of diversity; (2) deny dismissal as to Defendants Burns and Ehrhardt; (3) find that Defendants Burns and Ehrhardt are necessary parties

14

who acted and performed in this insurance transaction in the state of Missouri under the mandates and obligations of Missouri law; (3) in the exercise of discretion, decline to exercise jurisdiction over a diversity action raising issues of state law when those same issues are being presented contemporaneously to state courts; (4) award Plaintiff reasonable attorneys fees, costs and expenses for defending the combined motion and prosecuting the motion to remand, pursuant to 28 U.S.C § 1447(c); and (5) remand the instant action back to the Circuit Court of the City of St. Louis, State of Missouri.

                Respectfully submitted,
                THE CHASE LAW FIRM, PC

                __/S/   Sydney J. Chase_____
                Sydney J. Chase, *pro hac vice*
                Matthew S. Chase, Federal Bar No. 512274
                231 South Bemiston Avenue, Suite 800
                Clayton, MO 63105-1925
                (314) 537-4125 office
                (314) 754-8386 fax
                Email:  sydney@chaselawpc.com
                *Attorney for plaintiff,* Rico Ayuso

**CERTIFICATE OF SERVICE**

     I do hereby certify that on the 14th day of August, 2013, I electronically filed the foregoing sur-reply memorandum with the Clerk of the Court using the CM/ECF system, which will send notifications to the attorneys of record.

                __/S/   Sydney J. Chase_____
                      Sydney J. Chase